UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON

    Plaintiff,

v.

TWEEDS SUIT SHOP, LLC.

    Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff James Watson ("Plaintiff"), sues Defendant, Tweeds Suit Shop, LLC, ("Defendant"), for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

1.    Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

3.    Plaintiff is a Florida resident, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008, ("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

4. Plaintiff is legally blind, and substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5. Plaintiff uses the internet to help him navigate a world of goods, products and services like the sighted. The internet and websites provide him with a window into the world that he would not otherwise have. He sues Defendants for offering and maintaining a website that is not fully accessible and independently usable by visually impaired consumers. Plaintiff uses the JAWS Screen Reader software, which is one of the most popular reader Screen Reader Software ("SRS") used worldwide to read computer materials and comprehend the website information which is specifically designed for persons who are blind or have low vision. Due to his disability, Plaintiff cannot read computer materials and/or access the internet and websites for information without help from appropriate and available auxiliary aids, and screen reader software specially designed for the visually impaired.

6. The Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that

may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.' Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors websites to ensure and determine whether places of public accommodation and/or their websites are in compliance with the ADA.

8. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, or leases is located within this District.

9. Defendant, Tweeds Suit Shop, LLC**,** is a Florida limited liability company that, upon information and belief, owns and/or operates the "Tweeds" brand, a luxury custom clothier specializing custom-made menswear, including suits, tuxedos, dress shirts, sport coats, overcoats, and related apparel, with more than 10 open locations throughout Florida and other states, including their location at 5807 Sunset Dr., Miami, FL 33143, all open to the public. As such, a place of public accommodation within the meaning of Title III of the Americans with Disabilities Act ("ADA"), including 42 U.S.C. §§ 12181(7)(E) and 12182, and 28 C.F.R. § 36.104. Defendant also promotes and provides access to its merchandise and services through its commercial website.

10. As the owner, operator, and/or controller of stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity

which owns and/or operates "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11. Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(E), §12182, and 28 C.F.R. §36.104(2). Defendant also offers those items to the public through its website.

12. Since the effective date of the ADA, Defendant has constructed, caused to be constructed, and/or become a beneficiary of the website: https://www.tweedssuitshop.com ("Website"). Defendant is the owner, operator, lessor, and/or lessee of the website, which supports, is an extension of, is in conjunction with, is complementary and supplemental to Defendant's stores, by providing the public with information regarding the goods, services, accommodations, privileges, benefits, and facilities available to patrons at "Tweeds" physical locations. Upon information and belief, Defendant regularly maintains the website and derives substantial commercial benefit from its operation in connection with its "Tweeds" stores.

13. The website is offered as a primary means for the public to obtain information about "Tweeds," including its locations, hours of operation, and location-specific details for the stores. Through the website the public can learn about custom tailoring services, view available products, schedule in-store appointments, and purchase gift cards. The website also provides the public the ability to sign up to receive email updates, contact the business directly, as well as access links to Tweeds' social-media platforms for additional information and engagement. By providing these features the website functions as an integral component of the goods and services offered by Defendant and, by its nexus to Defendant's brick-and-mortar locations, constitutes a service,

privilege, advantage, or accommodation of a place of public accommodation subject to Title III of the ADA, including 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.

14. The website is an extension of Defendants' places of public accommodation, into individuals' homes and devices by providing the public access to essential business information, the ability to apply to schedule an appointment, purchase a gift card, and direct contact options. These features establish a sufficient nexus to Defendant's places of public accommodation, thereby subjecting the website to the requirements of Title III of the ADA, including 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.

15. Defendants' website provides access to the benefits of Defendants' sales establishments, and Plaintiff was denied those benefits when he was unable to access the website. The website is integrated with and has a direct nexus to Defendants' brick-and-mortar retail marketplace locations. Therefore, it is governed by the following provisions:

    a. 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

    b. 42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

    c. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such

individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

      d.      42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

      e.      42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

      f.      42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

      g.      42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

   h. 42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]'

  16. As the owner and/or operator of the website, Defendant is required to comply with the ADA and the provisions cited above. This includes an obligation to design, operate, and maintain a website that is accessible to and usable by individuals with visual impairments, so that they may enjoy full and equal access to the website and its content, including the ability to obtain information, schedule a fitting, purchase a gift card, and contact Defendant's store locations.

  17. Since the website is open to the public through the internet, by this nexus the website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected themselves and the website to the requirements of the ADA.

  18. Plaintiff attempted to access and/or utilize Defendant's website to test for accessibility, browse through the online information to educate himself as to "Tweeds" locations, hours of operations, and services available but he was unable, and continues to be unable to enjoy full and equal access to the website and/or understand the content therein, because numerous portions of the website do not interface with the JAWS screen reader software. Features of the

website that are inaccessible to JAWS screen reader software users include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

  i. Guideline 2.1.1 – Keyboard. When a button used to expand a question is selected on the 'FAQs' page, the associated answer is visually displayed on the page below, but no screen reader announcement is provided to indicate that new content has appeared. After expansion, keyboard focus remains on the 'expand/collapse' button, and the newly revealed answer content cannot be accessed using the tab key or arrow keys. Pressing the up or down-arrow key moves focus between the question labels and the unlabeled 'expand/collapse' buttons, but there is no way to navigate into or read the expanded answer content. As a result, although the answers are visually displayed, screen reader users are unable to access or review them at all. The accessibility widget was activated during the test. It was available on all pages except the checkout page.

  ii. Guideline 2.4.3 – Focus Order. The 'Gift Card' input field on the checkout page does not receive tab focus until after the 'Pay Now' button and footer links, which does not follow the expected focus order. It is unlikely that a screen reader user would complete the required checkout fields and then continue tabbing past the button used to complete the purchase and other unrelated footer content to find this additional field.

  iii. Guideline 3.3.1 – Error Identification. Error notifications are not announced on the scheduling page. If the 'Book an Appointment' button is selected before the required input field are completed, red outlines appear around each of the invalid fields, but nothing is announced by the screen reader to indicate that errors have occurred. Instead, users hear, "Alert processing the data please give it a few seconds…" and then focus automatically returns to the 'Tweeds' (home page) link in the navigation region. It is unclear what happened, why focus moved to the home page link, or whether the form submission was completed or successful. Then, after tabbing through the navigation region and returning focus to the form, the invalid fields are announced the same way as before submission, with no indication that an error is present or that corrective action is required. As a result, screen reader users receive no confirmation that the form failed to submit and have no way of knowing which fields need attention in order to submit it successfully.

  iv. Guideline 4.1.2 - Name, Role, Value. On the 'FAQs' page, all buttons used to expand and collapse individual questions are announced by the screen reader only as "clickable list with 1 item unlabeled button" or "unlabeled button." As focus moves through the page, the same generic announcement is repeated multiple times with no indication of which question each button controls. Because the FAQs themselves are not announced as part of the button label, there is no way to determine what content will be revealed when a button is selected unless the user navigates with the up-arrow key after its announcement. This makes the content difficult to understand and navigate using a screen reader, as users must interact with each unlabeled button without any meaningful context.

  v. Guideline 4.1.2 - Name, Role, Value. (2). On the 'About' page, images in the 'Meet the

Tweeds Team' section are announced as buttons or links, even though most do not perform any meaningful action. Almost all of these elements are announced using email-style labels, such as "example@gmail.com link," which suggests that they may be used for contact purposes. However, no contact functionality is available. In some instances, activating the element opens an image-only pop-up displaying the same photo in an enlarged format, while in other cases, activating the element produces no result at all. This inconsistent behavior and misleading labeling creates confusion for screen reader users, who are presented with 21 interactive controls without a clear purpose or predictable outcome.

19. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may relate to various third-party vendor platforms does not absolve Defendants of culpability. Because clothing stores are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(E). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

20. Plaintiff continues to attempt to use the website and/or plans to continue to attempt to use the website in the near future, and in the alternative, Plaintiff intends to monitor the website, as a tester, to determine whether it has been updated to interact properly with screen reader software.

21. That Plaintiff could not communicate with or within the website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is

unable to participate in the same browsing, shopping experience, and access to the same information, sales, and services, as provided at the website and in the physical locations as the non-visually disabled public.

22. As more specifically set forth above, Defendant has violated Title III of the ADA by failing to ensure that its website is compatible with screen reader software used by individuals who are blind or visually impaired. As a result, Defendant has failed to provide effective communication to Plaintiff and similarly situated individuals with disabilities. These violations have occurred either directly or through Defendant's contractual, licensing, or other arrangements related to its website and digital services. Defendant's failure to provide accessible digital content constitutes a violation of ADA's effective communication requirements under 28 C.F.R. § 36.303 e*t seq*.

    a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

    b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

    c. in failing to allow Plaintiff to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

    d. by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility,

privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

   e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

   f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

   g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

   h. by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

  23. As a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the website due to his blindness and the website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies,

and practices as set forth herein unless properly enjoined by this Court.

24. As the result of the barriers to communication which are present within the website and by continuing to operate and/or benefit from the website with such barriers, Defendant has contributed to Plaintiff's frustration, humiliation, sense of isolation and segregation and has deprived Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the public. By encountering the discriminatory conditions at Defendant's website and knowing that it would be a futile gesture to attempt to use the website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives Plaintiff of the equal opportunity offered to the public.

25. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's violations until Defendant is compelled to comply with the ADA and conform the website to WCAG 2.1 Level A and AA Guidelines.

26. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this website as described above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant. Plaintiff desires to access the website to avail himself of the benefits, advantages, goods and services therein, and/or to assure himself that this website has complied with the ADA so that he and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

27. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and

litigation expenses from the Defendants under 42 U.S.C. § 12205 and 28 CFR 36.505.

28. Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

29. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter the website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

**WHEREFORE** Plaintiff, James Watson demands judgment against Defendant, Tweeds Suit Shop, LLC, and requests the following injunctive and declaratory relief:

a. The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b. The Court issue a Declaratory Judgment that determines that Defendant's website is in violation of Title III of the ADA 42 U.S.C. § 12181 et seq.;

c. The Court issued a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain the website to ensure that it is readily accessible to and usable by persons with vision impairment;

d. That this Court issue an Order directing Defendant to alter the website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

e. That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective procedures;

f. That this Court enter an Order directing Defendant to continually update and maintain

the website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g. An award of attorney's fees, costs and litigation expenses under 42 U.S.C. § 12205; and,

h. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this February 2, 2026.

> By: */s/ J. Courtney Cunningham*
> Juan Courtney Cunningham, Esq.
> FBN: 628166
> **J. Courtney Cunningham, PLLC**
> 8950 SW 74th Court, Suite 220,
> Miami, Florida 33156
> T:  305-351-2014
> cc@cunninghampllc.com
> legal@cunninghampllc.com
>
> *Counsel for Plaintiff*